This suit was brought by complainant as tenant against his landlord to restrain forfeiture of a lease and to enjoin interference by defendant with the beneficial enjoyment of the demised premises. Defendant filed an answer denying complainant's right to relief and praying affirmatively that the court should decree cancellation of the lease and give a decree for arrears of rent alleged to be due to defendant from complainant.
The suit came on for hearing before former Vice-Chancellor Fallon and voluminous testimony was taken before him. He resigned as vice-chancellor before a determination of the suit and it has now been referred to me.
Complainant was assignee of a prior lease which provided for rental at the rate of $2,700 a year and expired by its *Page 353 
terms on the 1st day of February, 1935, which time has now passed. The lease contains provision as follows: "The party of the second part [lessee] agrees to make all inside repairs to said premises, and the party of the first part [landlord] agrees to make all outside repairs to said premises during the term of this lease, except as otherwise herein provided." It has another clause as follows: "At the expiration of said term of this lease, the said party of the second part will quit and surrender the premises hereby demised in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted."
On February 10th, 1929, there was a fire in the premises in question. Complainant occupied part of the ground floor as a store for the sale of women's wearing apparel, the front portion being used as a salesroom and a room in the back, known as workroom, for the storage and final preparation of garments for sale. The fire was discovered about nine o'clock on the evening of February 10th, which was Sunday. It was not finally extinguished until two or three hours later. The extent of the damage done by the fire itself and by the water thrown upon it by the firemen is somewhat in dispute, but it is conceded that the store occupied by complainant was rendered untenantable without considerable repairs and that his stock of goods was substantially destroyed by either the fire or water or both.
Complainant never used the premises as a store after the fire. After several months' delay defendant proceeded to make repairs on the main building, exclusive of complainant's store, and these repairs were, according to the evidence, completed during the month of November, 1929. In repairing the main building, defendant altered the stairway adjoining complainant's store in such a way that the width of complainant's store was reduced by approximately one foot. In the meantime and on August 14th, 1929, defendant instituted dispossess proceedings alleging that the lease had been terminated on the following grounds: (1) the premises were damaged by fire caused by the negligence of the tenant; (2) that the tenant refused to pay rent from March 1st, 1929; *Page 354 
(3) that the tenant refused to repair the premises which were damaged by fire caused by his negligence. In October, 1929, prior to the time fixed for a hearing of the dispossess proceeding, the bill herein was filed, and by this court a restraint was granted against defendant herein, enjoining him from proceeding with the dispossess action, on condition that complainant herein would file a bond indemnifying the landlord. The bond was not filed, but the dispossess proceeding has never been pressed to a decision.
In the spring of 1930, defendant proceeded to make repairs to complainant's store and completed these repairs about the month of March. Just previous to the completion of the repairs defendant physically excluded complainant from the store, and soon after the completion of the repairs placed another tenant in possession thereof.
On the final hearing it was the contention of complainant that it was the duty of defendant to repair complainant's store after the fire; that until the completion of such repairs complainant was under no obligation to pay any rent; that upon completion of the repairs to the store, which was about March, 1930, complainant was entitled to resume possession; and that instead of giving such possession to complainant, defendant wrongfully evicted complainant and turned over possession to another tenant. Complainant accordingly asked that it be restored to possession of the premises. Since the term of the lease has now expired, there can be no restoration of possession.
Defendant contends that the fire was caused by the negligence of complainant and further contends that the circumstances surrounding the fire were so suspicious as to force an inference that the fire was set by complainant or his agent.
I cannot find that these charges by defendant are substantiated by the evidence. It was the theory of defendant that the fire was caused by one or both of two electric pressing irons in complainant's workroom, that accidentally or by design the electric current was left on in one or both of the irons during a visit to the store made early Sunday afternoon by complainant's son. The son testified that he was in the *Page 355 
store to get a pair of pants, not later than about one o'clock Sunday afternoon, but he denied that he had at any time that day had any current turned on in either of the irons. This testimony, although questioned, was not contradicted. There was no evidence that either complainant or anyone else except the son was on the premises at all during the day. The irons were on or near a wooden pressing board or a work table and close to a wooden partition in the workroom, in which were hanging many light and inflammable dresses. Apart from the testimony of the son that neither electric iron had any current that day, it is highly probable that any fire started by an iron, if left by him with current on, would have brought about a fire which would be noticeable long before it in fact was discovered. Even if the son had negligently left the current on, this could not be imputed to his father in the absence of direct proof that the son deliberately set the fire through connivance with the father, since the son visited the store not in connection with his father's business, but solely on a personal errand. I therefore find that there is no proof that the fire was caused either by the negligence or illegal act of complainant.
This suit requires a construction of section 31 of the Landlord and Tenant act as applied to the circumstances here. The statute provides "that whenever any building or buildings erected on leased premises shall be injured by fire without the fault of the lessee, the landlord shall repair the same as expeditiously as possible, or in default thereof, the rent shall cease until such time as such building or buildings shall be put in complete repair * * * provided always that this section shall not extend to apply to cases where the parties have otherwise stipulated in their agreement of lease." The finding of this court being that the fire was not brought about by the fault of the lessee, the question remains as to whether the provisions of the lease heretofore quoted constitute a stipulation that the statute shall not apply.
In Carlay v. Liberty Hat Manufacturing Co.,81 N.J. Law 502, it was held that this statute was remedial, and therefore should be liberally construed. The court says (at p. 507): "No one can doubt that in the plainest terms this act includes *Page 356 
the objects above set forth. Nor can it be denied that the mischief, which lurked within the old law, and was designed to be suppressed, was the great injustice that ofttimes happened to tenants by being obliged to pay rent after the possibility of the beneficial enjoyment of the premises had ceased. The statute is therefore highly remedial, and its scope should be held to include a complete remedy for the recognized wrong it was intended to right. That object is plainly within its words." The court further says (at p. 510): "There is no reference in the lease to the statute or to its subject-matter. Concededly, advance payments merely modify the operation of the act. It is not claimed that such payments would avert its action in terminating the lease. They have not stipulated that the `section shall not extend to or apply' to the lease."
In my opinion, the provisions of the lease do not take the case out of the provisions of the statute. While the lease provides that the tenant shall make all inside repairs, there is no provision in the lease as to damage by fire and no reference to the statute and therefore I find that there is no stipulation that section 31 shall not apply.
There is considerable evidence in the record to show that the parties themselves originally so construed the lease. Soon after the fire, defendant had an architect to prepare plans and specifications on his behalf for repairs to the entire building including complainant's store. Defendant made no demand on complainant at that time nor for at least several months thereafter that complainant should make repairs to the premises occupied by him, but on the contrary notified complainant in writing on April 11th, 1929, that he was about to begin renovation and repair of the building and that it would be necessary for complainant to protect any of his property which might be upon the premises. In June he again notified complainant to the same effect. Repairs of any kind were not actually started until several months later, until after the dispossess proceeding was started.
As heretofore stated, before the time repairs were completed to the store around the 1st day of March, 1930, complainant had been forcibly refused access to the premises and *Page 357 
shortly thereafter defendant put another tenant in possession. Under these circumstances and under the provision of the Landlord and Tenant act complainant was under no duty to pay rent until completion of the repairs by the landlord and of course, under no duty to pay subsequently after a complete eviction by the landlord. There was therefore no forfeiture of the lease because of any breach of the terms of the lease by complainant.
In the bill of complaint, the complainant makes no prayer for damages and at the trial complainant's counsel stated to the court that "all the relief we ask is for the distraining of the dispossess action which is still pending." Evidence was offered on behalf of complainant which tended to show that complainant's store had a higher rental value than the rent reserved in the lease, but this was offered, according to complainant's counsel, for the purpose of showing that the landlord had a motive for getting rid of the tenant. Under these circumstances the court will make no effort to fix any damages, but will leave complainant to any action at law he may have on the covenants in the lease.
 A decree will be advised in accordance with this opinion. *Page 358